UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MICHAEL MORRISON | * | CIVIL ACTION NO. 22-4131 |
| | * | |
| VERSUS | * | DIVISION: 1 |
| | * | |
| CHASE BLANCHARD, ET AL. | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| | * | |
| | * | |
| ************************************ | * | |

ORDER AND REASONS

In this civil rights action, plaintiff Michael Morrison challenges the warrant that was issued for his arrest. Presently before the Court are the defendants' Motions to Dismiss. (Rec. Docs. 21, 22). The motion filed by Lieutenant Chase Blanchard must be granted because the Complaint contains no factual allegations concerning his conduct. Moreover, even if the Complaint was amended to include the allegation that Blanchard enforced the warrant when Morrison presented himself for arrest, Blanchard cannot be liable for any deficiencies in the warrant because the warrant was facially valid. The motion filed by the remaining defendants must also be granted. The only alleged error in the warrant concerns the distance Morrison was required to stay away from his ex-wife. But the warrant establishes probable cause even without this fact and there is no allegation to support finding that Detective Robert Lottinger or Officer Oliver Holmes knew of the error. Further, there are insufficient facts alleged to establish municipal liability because the other incidents alleged in the complaint are not sufficiently similar to suggest a pattern or practice of deliberate indifference to accurate presentation of the requirements of protective orders in affidavits in support of arrest warrants. Similarly, the claim for supervisory liability must fail because the facts alleged cannot support finding deliberate indifference to a need for training.

1

Accordingly, defendants' Motions to Dismiss (Rec. Docs. 21, 22) are GRANTED; Morrison's federal claims are hereby dismissed, and his state law claims are dismissed without prejudice.

<u>Background</u>

From January 27, 2021, through July 27, 2021, Mr. Morrison was subject to a state court protective order requiring that he not "abuse, harass, assault, stalk, follow, track, monitor, or threaten" his ex-wife, Adrienne Morrison, "in any manner whatever." (Rec. Doc. 20-1, at 6). He was also required not to contact Ms. Morrison or go within 50 feet of her without express written permission of the court.

The incidents giving rise to the arrest warrant at issue here occurred in late March 2021. In response to a complaint to the Houma Police Department by Ms. Morrison that Mr. Morrison had been looking through her fence, Detective Lottinger of the Houma Police Department began an investigation. According to the affidavit in support of arrest warrant that he signed on March 31, 2021, Ms. Morrison's neighbor had observed Mr. Morrison, had taken pictures, and had notified Ms. Morrison of her observations on March 27, 2021. Officer Holmes, also of the Houma Police Department, collected the photographs and secured them into evidence. According to Lottinger, the photos show Mr. Morrison walking his golden retriever on High Street and walking between two houses located at 904 High Street and 900 High Street. Mr. Morrison then walked up the fence line of 904 High Street until he reached the area that backed up to Ms. Morrison's backyard at 908 High Street. The pictures show that Mr. Morrison came to a stop and attempted to look through the fence into Ms. Morrison's backyard.

According to the affidavit, Lottinger also spoke to Ms. Morrison, who purportedly told him that Mr. Morrison had been constantly harassing and stalking her since she filed for divorce. Ms. Morrison explained that the house next door to her at 904 High Street is vacant. She said that she

was worried that Mr. Morrison would try to purchase the house. After learning of Mr. Morrison's visit to the area, she contacted the owner of the vacant house on March 28, 2021, and learned that Mr. Morrison had called and offered to purchase the property sight unseen for twice what the property was worth two days earlier. Ms. Morrison met with the owner and discussed the situation with her ex-husband. She asked him not to sell the house to Mr. Morrison and told the owner she would beat Mr. Morrison's offer.

Lottinger noted that the house did not have a for sale sign. Lottinger attested that he contacted the owner of the vacant house and that the owner verified Ms. Morrison's version of the events. The owner said that he told Mr. Morrison the house was not for sale but when Mr. Morrison offered to pay twice the value of the house he said he would think about it. The owner reported that Mr. Morrison annoyed him all weekend asking about the house and the owner finally told Mr. Morrison to stop calling him. The owner also told Lottinger that Mr. Morrison called him after he had met with Ms. Morrison and in an irate tone, Mr. Morrison stated "I know you were just with my ex-wife." The owner reported that the conversation became confrontational and he ended the call.

Importantly to the present lawsuit, Lottinger described the protective order as requiring Mr. Morrison not to "stalk, harass, track, monitor, or *go within 100 yards* of Ms. Morrison's residence." (Rec. Doc. 20-2, at 2) (emphasis added). In consideration of Lottinger's affidavit, Judge Jason Dagate issued a warrant for the arrest of Mr. Morrison for violation of a protective order on March 31, 2021. Id. at 4.

There is no dispute that Lottinger's affidavit contains one inaccuracy. Contrary to Lottinger's statement in the affidavit, the protective order does not require him to stay more than 100 yards from Ms. Morrison's residence. As to the remainder of the assertions in the affidavit,

3

Mr. Morrison admits that he was walking his golden retriever between 904 and 900 High Street for the purpose of evaluating the property for investment purchase potential. He admits that he contacted the owner about a potential purchase. He asserts that at no time was he within 50 feet of Ms. Morrison—although the affidavit does not allege that he was.  He says that there was no basis for the assertion that Mr. Morrison offered to pay twice the value of the property—although Lottinger attests that he obtained this information from both Ms. Morrison and the owner of the vacant property. Mr. Morrison complains that Lottinger acted with deliberate indifference by failing to verify the accuracy of the factual allegations in the affidavit. He alleges that Lottinger's deliberate indifference with regard to investigatory facts used to obtain the arrest warrant is part of a persistent, widespread practice of officials of Terrebonne Parish Consolidated Government.

Following the issuance of the arrest warrant, Mr. Morrison surrendered himself for arrest on April 2, 2021. He entered a "not guilty" plea on May 7, 2021, and the trial court found him not guilty on July 7, 2022.

Mr. Morrison filed this lawsuit against Detective Lottinger, Officer Holmes, Lieutenant Chase Blanchard, and the Terrebonne Parish Consolidated Government. Mr. Morrison does not allege how Officer Blanchard was involved other than alleging that he is employed by the Terrebonne Parish Sheriff's Office. According to Officer Blanchard's motion to dismiss, Blanchard booked Mr. Morrison when he surrendered himself for arrest at the Terrebonne Parish Criminal Justice Complex.

Mr. Morrison also describes other unrelated incidents where the Houma Police Department and/or the Terrebonne Parish Sheriff's Office[1] allegedly affected arrests that were not based on probable cause or that involved inaccurate information. It does not appear that any of the incidents

---

[1] Neither the Terrebonne Parish Sheriff's Office nor the Houma Police Department (nor either of either of their leaders) have been named as defendants.

involve an error in describing a protective order. Most involve narcotics investigations where the amount of drugs was allegedly misstated.

Mr. Morrison's First Amended Complaint purports to assert (1) a claim under 42 U.S.C. §1983 for a pattern and practice of deliberate indifference to facts in seeking arrests, (2) a claim under §1983 against the Terrebonne Parish Consolidated Government for failure to train and supervise, and (3) various state law claims. It is not clear whether Mr. Morrison's first claim is intended to encompass a claim against the officers in their individual capacities arising out of the investigation and arrest in addition to his claim against Terrebonne Parish Consolidated Government alleging an unconstitutional pattern and practice.

Terrebonne Parish Consolidated Government, Lottinger, and Holmes filed a motion to dismiss arguing that Mr. Morrison's complaint is conclusory and raises legally insufficient claims. Lotttinger and Holmes also argue that they are entitled to qualified immunity. Blanchard has filed a separate motion to dismiss pointing out that Mr. Morrison has not alleged any wrongdoing by Blanchard and arguing that he was merely the officer that arrested Mr. Morrison pursuant to a warrant he was not involved in obtaining. He argues further that he is entitled to qualified immunity.

Mr. Morrision opposes. He insists that Lottinger and Holmes deliberately provided inaccurate information to the magistrate judge in seeking the arrest warrant. He argues that Blanchard knew the warrant was bogus. He argues further that the examples of other incidents that he cites show that the Terrebonne Parish Sheriff's Office should have known of a policy of its employees' deliberate indifference to the facts when conducting criminal investigations. He argues further that there is a registry for protective orders and that Terrebonne Parish should have trained its officers on how to use it. If it had, he insists, there would have been no confusion as to the

distance or any other detail of the protective order. Finally, he argues that qualified immunity does not apply here because the defendants were not objectively reasonable.

Law and Analysis

1.  *Standard on a Motion to Dismiss*

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007) (quotation marks and ellipsis omitted). Accordingly, Rule 12(b)(6) allows a defendant to move for expeditious dismissal when a plaintiff fails to state a claim upon which relief can be granted. In ruling on a 12(b)(6) motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re* Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). Further, "[t]o survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level." Id. (citation, footnote, and quotation marks omitted). On that point, the United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

    *2. Individual Capacity Claims*

    Mr. Morrison has named Lottinger, Holmes, and Blanchard as defendants. They are not policy makers or supervisors. Lottinger and Holmes were involved with the investigation, Lottinger signed the affidavit in support of the arrest warrant, and Blanchard was the officer who booked Mr. Morrison when he surrendered himself for arrest. Thus, although Mr. Morrison has not clearly identified a claim against Lottinger, Holmes, and Blanchard in their individual capacities, it appears that he may be alleging that they violated his constitutional rights.

    Any such claims, however, cannot survive the plausibility standard of Rule 12(b)(6). With regard to Lottinger and Holmes,[2] "[i]t is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." Deville v. Marcantel, 567 F.3d 156, 170 (5th Cir. 2009) (quoting Taylor v. Gregg, 36 F.3d 453, 456 (5th Cir. 1994)). This is true even if the officer has a malicious motive, as long as the officer did not withhold any relevant information from the magistrate or grand jury. Taylor, 36. F3d at 457; see Cuadra v. Houston Indep. Sch. Dist., 626 F.3d 808, 813 (5th Cir. 2010) ("[T]he chain of causation remains intact if "it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant." (quoting Hand v. Gary, 838 F.2d 1420, 1428 (5th Cir. 1988)). Here, the affidavit in support of the arrest warrant was reviewed by Judge Dagate, and the Judge issued the arrest warrant.[3]

---

[2] The Court notes that the First Amended Complaint does not contain any factual allegations regarding Officer Holmes. As discussed in the Background section, supra, the affidavit attached the First Amended Complaint indicates that Holmes collected the photographs taken by Ms. Morrison's neighbor and appears to have had at least some involvement in the investigation leading to Mr. Morrison's arrest.

[3] Defendants also point out that a claim for false arrest or false imprisonment under Louisiana law fails if the arrest was made pursuant to statutory authority. Spencer v. Staton, 489 F.3d 658, 663–64 (5th Cir. 2007), opinion withdrawn in part on reh'g (July 26, 2007). "So long as a warrant corresponds to the technical requirements of Article 203 of Louisiana's Criminal Procedure Code, a false imprisonment or false arrest claim cannot stand." Spencer v. Staton, 489 F.3d 658, 664 (5th Cir. 2007), opinion withdrawn in part on reh'g (July 26, 2007). There is no basis for finding that

In the present case, then, a claim against the officers related to the application for a warrant can proceed under only two circumstances. First, "where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable . . . the shield of immunity [will] be lost." Malley v. Briggs, 475 U.S. 335, 344–45 (1986) (citation omitted). "The Malley wrong is not the presentment of false evidence, but the obvious failure of accurately presented evidence to support the probable cause required for the issuance of a warrant." Melton v. Phillips, 875 F.3d 256, 264 (5th Cir. 2017). The question is whether, "'on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue' under the circumstances." Blake v. Lambert, 921 F.3d 215, 220 (5th Cir. 2019) (quoting Spencer v. Staton, 489 F.3d 658, 661 (5th Cir. 2007), opinion withdrawn in part on reh'g (July 26, 2007)).

Second, under Franks v. Delaware, an official may be liable if he 'swear[s] to false information in an affidavit in support of a search [or arrest] warrant, provided that: (1) the affiant knew the information was false or would have known it was false except for the affiant's reckless disregard for the truth; and (2) the warrant would not establish probable cause without the false information.'" Blake v. Lambert, 921 F.3d 215, 222 (5th Cir. 2019) (quoting Hart v. O'Brien, 127 F.3d 424, 442 (5th Cir. 1997) abrogated on other grounds by Kalina v. Fletcher, 522 U.S. 118 (1997)) (alterations in original). In assessing the second prong of the Franks test, the Court considers the affidavit as if the error was removed and then examines the "corrected affidavit" to determine whether probable cause for issuance of the warrant nonetheless exists. Winfrey v. Rogers, 901 F.3d 483, 495 (5th Cir. 2018).

Mr. Morrison argues that Lottinger and Holmes knew information in the affidavit was false and deliberately misled the magistrate in seeking a warrant. However, there is not a single factual

---

the warrant did not correspond to the technical requirements of Louisiana law and, therefore, Mr. Morrison could not state a claim for false arrest if he had intended to state one here.

allegation to support this inference. Mr. Morrison alleges—and defendants admit—that the affidavit erroneously stated that the protective order required Mr. Morrison to stay more than 100 yards from Ms. Morrison's residence. Instead, it is undisputed that the protective order required him to say more than 50 feet away from Ms. Morrison. However, there is no fact alleged to support finding that Lottinger knew of this error when he prepared the affidavit and that he intentionally included it anyway. Lottinger's error may have been merely negligent. However, it is also plausible that Lottinger acted with a reckless disregard for the truth when he failed to accurately recite the terms of the protective order that formed the basis of the violation alleged in the affidavit.

Nonetheless, Mr. Morrison's claims against Lottinger and Holmes still fail because the affidavit establishes probable cause even without the incorrect information. Lottinger accurately attested that the protective order required that Mr. Morrison was not permitted to stalk, harass, track, or monitor Ms. Morrison. The facts attested to in the affidavit, supported by photographs and witness interviews, establish probable cause that Mr. Morrison—in seeking to purchase a vacant property next to Ms. Morrison that was not on the market for twice what it was worth,[4] in becoming irate when he learned that the homeowner had talked to Ms. Morrison, and in peering through Ms. Morrison's fence—was engaged in stalking, harassing, tracking, or monitoring of Ms. Morrison. Nowhere does the affidavit rely on Mr. Morrison's distance from Ms. Morrison's residence. For example, Lottinger does not assert that Mr. Morrison was looking through a part of Ms. Morrison's fence that was less than 100 yards from her residence. Although the trial court ultimately determined that Mr. Morrison had not violated the protective order, that is not determinative. "[P]robable cause requires only a probability or substantial chance of criminal

---

[4] Mr. Morrison claims that he did not offer to purchase the house for twice what it was worth. However, according to the affidavit not only did Ms. Morrison tell Detective Lottinger that Mr. Morrison had done so, but the homeowner confirmed this allegation in his conversation with Lottinger. There is no fact alleged from which one could conclude that Lottinger falsified these assertions.

activity, not an actual showing of such activity.'" <u>Deville v. Marcantel</u>, 567 F.3d 156, 165 (5th Cir. 2009) (quoting <u>Illinois v. Gates</u>, 462 U.S. 213, 244 n. 13 (1983)). The Court finds that even without the erroneous description of the protective order's distance requirements, the affidavit plainly establishes probable cause for a violation of the protective order. Accordingly, to the extent Mr. Morrison sought to assert a claim against Lottinger and Holmes arising out of their investigation and preparation of the affidavit, those claims fail to meet the plausibility standard of Rule 12(b)(6) and must be dismissed.

As to Lieutenant Blanchard, Mr. Morrison's complaint does not contain a single factual allegation regarding his involvement in the incident at issue here. Therefore, the First Amended Complaint does not state a claim against Blanchard. Blanchard admits, though, that he booked Mr. Morrison pursuant to the arrest warrant when Mr. Morrison surrendered himself for arrest. Mr. Morrison argues in opposition to the Motion to Dismiss that Blanchard knowingly executed the warrant "although there was doubt as to the validity of the warrant." However, not one fact has been alleged to support this conclusion. To the contrary, the warrant is valid on its face. Where there is no basis to conclude that an arresting officer was not acting in good faith, the law does not require that he "go behind the warrant and question its validity." <u>Kugle v. Shields</u>, 62 F.3d 395 (5th Cir. 1995) (unpublished). As long as "a reasonable officer could have believed [the arrest at issue] to be lawful," the arresting officer is protected by qualified immunity – even if he "reasonably but mistakenly" concludes that the arrest was proper. <u>Mendenhall v. Riser</u>, 213 F.3d 226, 230 (5th Cir. 2000) (quoting <u>Hunter v. Bryant</u>, 502 U.S. 224, 227 (1991)). The only possible conclusion here is that a reasonable officer would have believed the arrest warrant was valid. There is no plausible basis for a claim against Lieutenant Blanchard in his individual capacity to the extent Mr. Morrison has attempted to assert one.

*3. Mr. Morrison's Count 1 "Pattern of Deliberate Indifference to Facts in Seeking Arrest"*

Mr. Morrison argues that there is a pattern or practice of deliberate indifference to the facts asserted by officers in support of arrests. Because Lottinger, Holmes, and Blanchard are not policy makers, it appears that Mr. Morrison attempts to assert this claim for municipal liability directly against the Terrebonne Parish Consolidated Government.[5] Although the Court has found no constitutional violation that could support any claims against the municipality, the Court considers whether, had there been a constitutional violation, Mr. Morrison could state a claim for municipal liability.

Although municipal and local governments do not enjoy immunity under the Eleventh Amendment, their potential liability is still circumscribed in another significant respect: they can be held liable in federal civil rights cases only when the alleged constitutional violation resulted from their governmental **policies** and **customs**. As the United States Supreme Court has explained, a local government is only liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Department of Social Services of City of New York, 436 U.S. 658, 694 (1978). To establish an official policy, the plaintiff must show

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

---

[5] Presumably Mr. Morrison's theory is that this municipality is responsible for the employees of the Terrebonne Parish Sheriff's Office and/or the Houma Police Department.

Bennett v. City of Slidell, 735 F.2d 861, 862 (5th Cir. 1984). "Allegations of an isolated incident are not sufficient to show the existence of a custom or policy." Fraire v. City of Arlington, 957 F.2d 1268, 1278 (5th Cir. 1992). Instead, "[s]ufficient duration or frequency of abusive practices, or other evidence, must warrant a finding of knowledge on the part of the governing body that the objectionable conduct has become customary practice of city employees." Bennett, 728 F.2d at 768. Further, "[a] pattern requires similarity and specificity; '[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question.'" Peterson v. City of Fort Worth, Tex., 588 F.3d 838, 851 (5th Cir. 2009) (quoting  Est. of Davis ex rel. McCully v. City of N. Richland Hills, 406 F.3d 375, 383 (5th Cir. 2005)). Thus, courts have held that the prior incident must "be fairly similar to what ultimately transpired." Hicks-Fields v. Harris Cnty., Texas, 860 F.3d 803, 810 (5th Cir. 2017) (quoting Est. of Davis ex rel. McCully v. City of N. Richland Hills, 406 F.3d 375, 383 (5th Cir. 2005)).

The plaintiff must also show that the official policy or custom was the "cause in fact" of the deprivation of rights by alleging that "'the custom or policy served as the moving force behind the [constitutional] violation' at issue." Spiller v. City of Texas City, Police Dep't, 130 F.3d 162, 167 (5th Cir. 1997). The plaintiff cannot rest on conclusory allegations but must allege specific facts. Id.

Here, Mr. Morrison appears to allege that the Terrebonne Parish Consolidated Government had an official policy or custom of deliberate indifference to the facts in seeking arrests. In addition to the error with regard to the protective order requirements that purportedly resulted in a deprivation of Mr. Morrison's rights, he cites to five other incidents. He says that on July 10, 2022, the Houma Police arrested an individual for a felony, but the court found no probable cause for the

arrest. He says that on March 6, 2020, officers from the Houma Police Department and the Terrebonne Parish Sheriff's Office participated in an investigation resulting in the seizure of suspected methamphetamine but misstated the amount and value of the drugs. He says that on March 26, 2021, Houma and Terrebonne officers participated in an arrest an investigation that involved the same inaccurate information regarding drug amounts presented to the court in support of an arrest warrant. He says that on July 17, 2022, Houma and Terrebonne officers participated in an arrest and investigation that included providing inaccurate and misleading information to the court in support of arrest warrants resulting in the arrest of a citizen for a charge that does not exist in the criminal code. And he says that on January 21, 2021, and February 4, 2021, officers in a narcotics investigation failed to accurately describe the narcotics recovered due to a "copy/paste" procedure resulting in the exact same amount of narcotics allegedly recovered on two different dates.

These incidents are dissimilar from the issue in this lawsuit. The July 10, 2022, incident does not appear to involve inaccurate information in an affidavit in support of an arrest warrant. The January/February 2021 also does not appear to involve an application for an arrest warrant. The March 2020 and March 2021 incidents involve stating inaccurate amounts of drugs in support of arrest warrants, but the Court finds this kind of error is not comparable to an error in describing the requirements of a protective order. It is unclear what inaccurate or misleading information was included in support of the arrest warrant in the July 2022 incident.

Importantly, to survive a motion to dismiss, Mr. Morrison must have alleged a persistent and widespread practice that is so common that it can be attributed to the municipality and he must also allege that this practice was the cause in fact of the alleged constitutional violation. Even assuming the existence of a constitutional violation connected to the errors in the protective

order—contrary to the Court's conclusions above regarding Mr. Morrison's failure to state a claim for a constitutional violation by the individual officers—the Court finds the other incidents alleged by Mr. Morrison cannot plausibly lead to the conclusion that there was a widespread practice of deliberate indifference to the facts asserted in affidavits in support of arrest such that the practice can be attributed to the municipality. Nor do the facts support finding that any such municipal policy was the moving force behind the error in the Lottinger affidavit. The Court therefore finds that Mr. Morrison has failed to state a claim against Terrebonne Parish Consolidated Government arising out of an unconstitutional policy or practice.

4.   *Mr. Morrison's Count 2 "Failure to Train and Supervise"*

Mr. Morrison also attempts to implicate Terrebonne Parish Consolidated Government for failing to train and supervise its law enforcement officers. He again cites the five incidents alleged with regard to his "pattern or practice" claim. In defendants' motion to dismiss, they argue that Mr. Morrison has failed to allege specific facts as to what actions taken by the officers implicated here would indicate a lack of training. In opposition to defendants' motions, Mr. Morrison argues that if Holmes and Lottinger had been trained on how to access and use the statewide registry for protective orders, the affidavit would not have contained errors with regard to the distance limits imposed by the protective order or any of its other requirements. Although the Court has found no constitutional violation that could support any claims for failure to train and supervise, the Court considers whether, had there been a constitutional violation, Mr. Morrison could state a claim for supervisory liability.

"[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989). This is because only

then can the failure to train "be properly thought of as a city 'policy or custom' that is actionable under § 1983." Id. at 389. For example:

> it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.

Id. at 390. "[J]ust as proof of a custom or practice requires more than a showing of isolated acts, proof of deliberate indifference, generally requires a showing 'of more than a single instance of the lack of training or supervision causing a violation of constitutional rights.'" Burge v. St. Tammany Par., 336 F.3d 363, 370 (5th Cir. 2003) quoting Thompson v. Upshur Cnty., TX, 245 F.3d 447, 459 (5th Cir. 2001)).

Even if the error in the affidavit in support of arrest warrant here amounted to a constitutional violation, Mr. Morrison has failed to state a claim against the Terrebonne Parish Consolidated Government for failure to train. The First Amended Complaint alleges that the same five incidents addressed above establish a pattern and practice of failure to train. As defendants rightly point out, the First Amended Complaint contains no factual allegations to support finding that the error resulted from a lack of training. If Mr. Morrison were allowed to amend his complaint to allege that the officers should have been trained on how to use the statewide protective order registry to access the protective order, there would still be no basis to conclude that the inadequacy of the officer's training was so likely to result in a violation of constitutional rights that the municipality had been deliberately indifferent to the need for such training. Not one of the other incidents alleged involve officers erroneously describing the requirements of a protective order. There is no factual basis to conclude that the Terrebonne Parish Consolidated Government was deliberately indifferent to training its officers on obtaining and accurately reciting the contents of

protective orders. Accordingly, the Court finds that Mr. Morrison has failed to state a claim for failure to train.

     *5. State Law Claims*

     Mr. Morrison's First Amended Complaint also includes generic state law claims arising in negligence or intentional torts or in the violation of unidentified Terrebonne Parish ordinances. Defendants ask that the Court decline to exercise supplemental jurisdiction and dismiss these claims without prejudice. Mr. Morrison does not address this issue.

     Under 28 U.S.C. § 1367, a federal court has supplemental jurisdiction over state law claims that are so related to the federal claims that they form part of the same case or controversy. District courts can decline to exercise supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). The court also considers "judicial economy, convenience, fairness, and comity." Brookshire Bros. Holding v. Dayco Prod., Inc., 554 F.3d 595, 602 (5th Cir. 2009). "[T]he general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial . . . ." Id. ; see United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").

Considering that this case is in its earliest stages, the Court finds it appropriate to decline to exercise supplemental jurisdiction over Mr. Morrison's state law claims. Accordingly, these claims are dismissed without prejudice.

<u>Conclusion</u>

Mr. Morrison has failed to state a claim for a constitutional violation against Lottinger, Holmes, or Blanchard, and therefore, any claims against them in their individual capacities are hereby dismissed. The lack of a constitutional violation also precludes Mr. Morrison's municipal liability and supervisory liability/failure to train claims. Moreover, the Court has found that Mr. Morrison could not state a claim for such municipal liability in any event because the facts alleged do not establish a pattern or practice that could trigger municipal or supervisory liability, nor could they result in a finding of deliberate indifference. Accordingly, Mr. Morrison's claims for a pattern and practice of indifference and a failure to supervise and train are hereby dismissed. Finally, the court has declined to exercise supplemental jurisdiction and hereby dismisses Mr. Morrison's state law claims without prejudice.   Defendants' Motions to Dismiss (Rec. Docs. 21, 22) are GRANTED.

New Orleans, Louisiana, this 3rd day of April, 2023.

Janis van Meerveld
United States Magistrate Judge

17